## LEE WILSON & CO. v. STATE.

### Opinion delivered July 10, 1916.

1. SABBATH BREAKING—BURDEN OF PROOF.—Where defendants were indicted for Sabbath breaking, the burden is upon them to show the existence of necessity which justifies their non-observance of the Sabbath.

2. SABBATH BREAKING—NECESSITY.—It is no defense to a charge of Sabbath breaking against the employees of a saw mill, which furnished light and water to a certain town, that it was necessary for certain employees to get out logs on Sunday, in order that the mill might run on the other days in the week.

Appeal from Mississippi Circuit Court, Osceola District, *W. J. Driver*, Judge; affirmed.

*Coleman, Lewis & Cunningham*, for appellants.

The labor performed on the Sabbath was a work of *necessity*. Kirby's Digest, §§ 2030-2032; 61 Ark. 216; 72 *Id.* 167; 75 *Id.* 188. The fines were in excess of the statutory penalty. Kirby's Digest, § 2030.

*Wallace Davis*, Attorney General, and *Hamilton Moses*, for Appellee.

The work done does not fall within the exception contemplated by the statute. The burden was on appellants to prove *unavoidable necessity*. 56 Ark. 116; 61 *Id.* 216; 118 Ind. 248; 97 Mass. 411; 190 *Id.* 578; 112 *Id.* 467; 85 Ark. 135; 76 Ind 310; 112 Mass. 112. The fine is not excessive, but if so, this court will modify the

sentence. Only the excess is void. 45 L. R. A. 137; 47 Barb. 503; 45 Cal. 281; 7 Abb. Pr. 96; 91 Am. Dec. 546; 60 N. Y. 559; 66 N. Y. 8; 97 *Id.* 212; 106 U. S. 371; 146 Mass. 489; 103 Ind. 440; 71 Am. Dec. 374; 87 Ala. 1; 153 U. S. 48; 52 So. 627; 137 Pac. 121; 102 Fed. 473; 102 N. W. 883; 101 Fed. 817; 51 L. R. A. 373; Brown on Jurisdiction, § 106; 83 Ala. 55; 85 Cal. 600.

McCulloch, C. J. Appellants were employees of Lee Wilson & Company, a corporation which operated a sawmill at Wilson, Mississippi County, Arkansas. They were members of a log train crew and were indicted for working unlawfully on the Sabbath day, in violation of the statute which makes it a criminal offense for anyone to labor on the Sabbath unless the labor performed is a work of charity or necessity. The case was tried before the court sitting as a jury, upon an agreed statement of facts, and the court adjudged the appellants to be guilty and assessed against each of them a small fine, and they have prosecuted an appeal to this court.

The sawmill of Lee Wilson & Company, situated at Wilson, is used not only for the manufacture of lumber, but the power which operates the mill is also used in supplying light and water to the inhabitants of Wilson, which is a town of about a thousand population. There are about 250 men employed at the mill, and they work six days in the week. The fact that water and light are supplied from the power generated at the mill makes it necessary to continuously keep up steam, and, of course, a few men are employed on Sunday for that purpose. Appellants, however, belong to the log crew and are not directly engaged in the work of operating the plant. The defense tendered is that it was necessary for the members of the log crew to work on Sunday in order to provide sufficient logs to prevent a shut-down of the mill during work days, and also to furnish enough fuel to keep the mill running continuously.

The agreed statement of facts contains the following stipulation with respect to the fuel proposition: "The boilers at the sawmill are so equipped that they use as fuel the sawdust and refuse which results from the manu-

facture of logs into lumber. Other fuel cannot be used in them without extensive and expensive alterations." The other stipulation with respect to the necessity for furnishing logs reads as follows: "The sawmill by operating six days per week uses more logs than the log loader, log train and entire logging resources of Lee Wilson & Company could furnish in a like period. At the time mentioned in the information Lee Wilson & Company's entire reserve supply of logs and fuel had become exhausted, and it was necessary for the log loader and log train crew to work on Sunday to keep the mill in operation."

It is also stipulated that during a period of several weeks, including the time appellants are charged with having violated the Sabbath laws, "there was such an excess of rainfall in Mississippi County that the ground in the woods surrounding Wilson, Arkansas, for long distances, and in all the woods from which Lee Wilson & Company did and could obtain a supply of logs, became so soft that it was impossible to get logs from the woods to the railroad. It is impossible to handle logs from the woods to the mill by wagon, or to get them in any other manner than that in use by Lee Wilson & Company."

(1) Appellants attempt to make a showing of necessity on two grounds: one that the fuel ran out and that it was necessary to get the logs on Sunday in order to furnish the mill enough logs, the sawing of which would afford enough refuse to use for fuel on Sunday as well as the other days in the week; and also that it was necessary at this particular time for the log crew to work seven days in the week in order to furnish sufficient logs to keep the mill running six full days, and thus prevent a shut-down. The burden of proof was on appellants to show the existence of necessity which justified their non-observance of the Sabbath. *Shipley* v. *State*, 61 Ark. 216.

Counsel for appellants rely mainly upon the case of *Turner* v. *State*, 85 Ark. 188, but we do not think that there is sufficient similarity in the facts of that case to make it controlling in the present case. The accused in that case worked at a large sawmill, which also furnished

the power for supplying light and water to the town where the mill was located. The accused was fireman at the mill, and it was his duty to keep up steam to generate enough power to run the machinery which supplied the water and light. Incidentally he cleaned out the boilers and did that work on Sunday in order to prevent a shut-down of the mill on work days, which would have thrown three or four hundred men out of employment. It was conceded that the work of operating the plant to furnish light and water was a work of necessity, and we held that under those circumstances the incidental work of cleaning out the boilers in order to prevent a shut-down of the mill on a work day was not a violation of the law, where it appeared that to prevent that it would have been necessary for the mill company to put in four more boilers at a large expense. The effect of that decision was that where the work was only incidental to that which was necessary, and the expense of providing means to obviate the work was considerable, the labor would be treated as necessary within the meaning of the law which justified its prosecution on the Sabbath day.

(2) Now, the contention in the present case that it was necessary for the men to work on Sunday to secure enough logs to keep the mill going on Monday is untenable, for if that be true it would justify almost any kind of Sabbath work. The policy of the law is to stop all kinds of labor on the Sabbath day except things of real necessity, and all men are expected to conform their business arrangements accordingly. If it was reasonable to provide means to keep the work going on without laboring on the Sabbath the duty rested upon everyone to do so, as it is only in case of extreme emergency that one is justified in disregarding the Sabbath in order to make preparations for work or to continue work begun on other days of the week. For instance, in *State* v. *Goff*, 20 Ark. 290, the court held that "the husbandman should look forward to the ripening of his grain as an event which must happen, and should make such timely provision for the harvest as not to violate the Sabbath." And in *Shipley* v. *State, supra*, it was held that the fact that it was necessary to keep the

pumps and fan at work in a coal mine, in order to keep the mine in shape for operation on other days, did not constitute a defense to a charge of violating the Sabbath, and that it was the duty of those engaged in operating the mine to provide such means and appliances as would obviate the necessity of labor on the Sabbath.

So in the present case, it was the duty of Lee Wilson & Company, if it expected to operate its mill six days in the week, to make reasonable provision for supplying logs in emergencies of this kind so as not to require the members of the logging crew to work on Sunday in order that the other men could be given employment on week days.

Nor is it any excuse that it was necessary to furnish fuel, for the appellants have not shown that it would have been unreasonably expensive to procure additional fuel to run the boilers on Sunday so as to keep enough steam to furnish water and light to the town. It is true it is stipulated that other fuel could not be used without "extensive and expensive alterations," but it does not appear from this that the company could not at reasonable expense have procured other fuel of the same kind as that which was ordinarily used. Sawdust and slabs were used for fuel, according to the stipulation, and for aught that appears to the contrary other wood fuel might have been obtained at reasonable expense. The burden was, as before stated, on the appellants to show that there was a real necessity for the Sunday work, and we cannot say that the trial court was not warranted in drawing an inference from the agreed statement of facts that no real necessity for the work was proved.

The judgment is therefore affirmed.